Matter of Aphrodite A. (Heather A.)

2026 NY Slip Op 02012

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Aphrodite A., Alleged to be a Neglected Child. Broome County Department of Social Services, Respondent; Heather A., Appellant.

Decided and Entered:April 2, 2026

CV-24-1729

Calendar Date: February 10, 2026

Before: Clark, J.P., Aarons, Pritzker, Mcshan And Corcoran, JJ.

Sandra M. Colatosti, Albany, for appellant.

Cheryl D. Sullivan, County Attorney, Binghamton (Kuredin V. Eytina of counsel), for respondent.

Daniel P. Moskowitz, Monticello, attorney for the child.

[*1]

Clark, J.P.

Appeal from an order of the Family Court of Broome County (Brett Noonan, J.), entered September 25, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.

Respondent (hereinafter the mother) is the mother of the subject child (born in 2021), who has been in and out of foster care for the majority of her life. On August 26, 2023 — just three days after the child had been returned to the mother's care following the resolution of a neglect proceeding concerning indicated reports for, among other things, untreated mental health and substance abuse issues — petitioner received a report alleging that the mother was having auditory hallucinations and paranoid delusions while the child was in her sole care. The mother consented to placing the child in a kinship foster home during the ensuing investigation, which resulted in an indicated report for inadequate guardianship. In September 2023, petitioner filed a neglect petition against the mother alleging that the child had been harmed or was at imminent risk thereof as a result of the mother's untreated mental health and substance abuse issues. The mother consented to the child's continued placement in kinship foster care during the pendency of the proceeding and, following a multiday fact-finding hearing, Family Court adjudged the child to have been neglected by the mother. The mother appeals.FN1

We affirm. Contrary to the mother's contention, Family Court's neglect finding has a sound and substantial basis in the record. "A party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Matter of Kingston V. [Javon V.], 234 AD3d 1056, 1057 [3d Dept 2025] [internal quotation marks and citations omitted], lv dismissed 43 NY3d 951 [2025]; see Family Ct Act §§ 1012 [f] [i] [B]; 1046 [b] [i]; Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]). "Notably, a finding of neglect requires only an imminent threat of injury or impairment, not actual injury or impairment, and such threat may be established through a single incident or circumstance" (Matter of Kingston V. [Javon V.], 234 AD3d at 1057 [internal quotation marks, brackets and citations omitted]; see Matter of Aerobella T. [Bartolomeo V.], 170 AD3d 1453, 1453-1454 [3d Dept 2019]). "In determining whether [a parent] failed to exercise a minimum degree of care, the critical inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Bonnie FF. [Marie VV.], 220 AD3d 1078, 1079-1080 [3d Dept 2023] [internal quotation marks, ellipsis and citations omitted[*2]]; see Matter of Jasic UU. [Natasha UU.], ___ AD3d ___, ___, 2026 NY Slip Op 00958, *1 [3d Dept 2026]; Matter of Cheyenne Q. [Charles Q.], 196 AD3d 747, 478 [3d Dept 2021], lv denied 37 NY3d 915 [2021]). "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (Matter of Addilyn I. [Richard I.], 245 AD3d 1038, 1039 [3d Dept 2026] [internal quotation marks and citations omitted]; see Matter of Raquel ZZ. [Angel ZZ.], 216 AD3d 1242, 1244 [3d Dept 2023]; Matter of Asiah S. [Nancy S.], 212 AD3d 1062, 1063 [3d Dept 2023], lv denied 39 NY3d 913 [2023]).

The testimony at the fact-finding hearing established that, prior to the commencement of the underlying neglect proceeding, the mother had been the subject of several prior indicated reports of inadequate guardianship pertaining to her care of the subject child and her two older children. The prior reports concerned allegations of untreated substance abuse and mental health issues, among other concerns, and resulted in the subject child being placed in kinship foster care. As for the circumstances of the underlying neglect proceeding, petitioner elicited testimony from the mother's cousin, who served as the child's kinship foster placement, about the circumstances precipitating the August 26, 2023 child protective report.FN2 She explained that, on the morning of August 26, she woke up to a Facebook message and missed calls from the mother around 12:00 a.m. When she subsequently returned the mother's calls, the mother was "really frantic saying that people were outside . . . threatening her." The mother's statements prompted the cousin to call the police, who performed a welfare check at the mother's residence and found no evidence to support the mother's claim that people were outside of her home. The cousin received several additional paranoid calls from the mother throughout the day, causing her to call the police another three times to perform welfare checks. On each occasion, the police found no evidence to support the mother's claims.

When the cousin went to the mother's house to check on her later that morning, the mother had a friend over and was smoking marihuana while holding the child. The cousin confirmed that the mother was impaired at the time, that there was no sober caretaker for the child, and that she had previously seen the mother under the influence of drugs while taking care of her other children. The mother also showed the cousin used syringes outside of her bedroom window and "kept saying that she was scared of the [child] because [she] was looking at her funny," causing the cousin to become concerned. The cousin offered to have the mother and child stay at her home, but the mother declined. During one of the welfare checks performed on August 26, 2023, a determination was made to remove the child and the mother consented to placing [*3]the child in the temporary care of the cousin during the ensuing investigation. The cousin testified that, upon picking the child up on that date, the mother was "very irate [sic]," refused to take a drug test, threatened to "kill herself" and told the child "they're taking you from me again."

Petitioner also proffered evidence that, when a caseworker spoke by phone with the mother on August 28, 2023, the mother continued to relay her belief that people had been trying to break into her home two days prior and that there had been "voices . . . following her around the house." The caseworker confirmed that the mother had agreed to allow the child to stay with her cousin during the pendency of the investigation and signed a safety plan for the child. When the caseworker asked the mother about potential drug use during their phone conversation on August 28, the mother admitted to cocaine use two years prior and revealed that she had relapsed in June 2023. Although the mother maintained that she had last used drugs in June 2023 and initially agreed to take a drug test, she subsequently declined to submit to a urine screen when the caseworker attempted to facilitate one. The caseworker also asked the mother about mental health concerns during the phone call on August 28 and she acknowledged that she had several mental health diagnoses. Although the mother claimed that she was on a waitlist for mental health treatment with three service providers, the caseworker learned that the mother was on a waitlist with only one provider and that the provider did not have the necessary staff to treat her conditions.

During a subsequent conversation with the mother on September 6, 2023 — a few days prior to the filing of the instant neglect petition — the caseworker spoke with the mother about a text message conversation she had had with a different caseworker in which the mother indicated that she had been going through withdrawal from drugs on the evening of August 26, 2023. The caseworker testified that, when she asked the mother about such text message, the mother denied having sent it and claimed someone had taken her phone. The caseworker testified that, at the end of the investigation into the August 26 report, the case was indicated for inadequate guardianship based upon the mother's untreated mental health issues and the failure to obtain a drug evaluation, confirming that the mother was refusing to submit to drug testing on the basis that "she didn't have to."

Police officers who performed the welfare checks at the mother's residence on August 26, 2023 also testified at the fact-finding hearing. The officers described the child as appearing in good health on that date and relayed that they did not have concerns about the mother being a danger to herself or others. One of the officers, however, became concerned about the child's welfare insofar as the mother "continuously [kept] pick[ing] the child up" and moving her from room to room to try to get away [*4]from voices that "weren't actually present," waking the child up in the process. The officer also testified that he called Child Protective Services after dispatch advised that the mother was making statements about the child wanting to harm her.

Although the mother presented evidence in defense of the neglect petition, including calling the cousin to provide testimony on her behalf, we are satisfied that petitioner proved the neglect allegations by a preponderance of the evidence. We first turn to Family Court's finding that the mother failed to "exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship" (Family Ct Act § 1012 [f] [i] [B]). While we commend the mother for promptly consenting to the child's placement in foster care during the pendency of the investigation into the child protective services report received on August 26, 2023, we note that she had declined the cousin's earlier offer to stay with the child at the cousin's home despite experiencing hallucinations and believing that people were attempting to break into her residence when they were not. Instead, the mother decided to smoke marihuana while holding the child on that date, leaving the child without a sober caregiver, notwithstanding that she had been returned to the mother's care only three days prior in connection with previous indicated reports for untreated mental health and substance abuse issues. The mother then refused to submit to a drug screen and was not taking appropriate steps to address her mental health concerns, demonstrating a lack of insight into her struggles. Given this evidence, there is a sound and substantial basis in the record to support Family Court's finding that the mother failed to act as a reasonably prudent parent would have under similar circumstances (see Matter of Nina VV. [Wendy VV.], 216 AD3d 1215, 1217 [3d Dept 2023]; Matter of Alexis TT. [Andrea VV.], 204 AD3d 1311, 1314 [3d Dept 2022]). As for the actual or imminent impairment element of neglect, the foregoing evidence also provides a sound and substantial basis for Family Court's finding that the child was placed in actual or imminent danger as a result of the mother's conduct (see Matter of Wynter V. [Felitta V.], 230 AD3d 505, 505 [2d Dept 2024]; Matter of C.B. [Tiffany S.], 225 AD3d 415, 417 [1st Dept 2024]; Matter of Maggie YY. [Lisa ZZ.], 172 AD3d 1562, 1563 [3d Dept 2019]; compare Matter of Chloe P.-M. [Martinique P.], 220 AD3d 783, 785 [2d Dept 2023]). Accordingly, there is no basis to disturb Family Court's order.

Aarons, Pritzker, McShan and Corcoran, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The attorney for the child argues that Family Court's neglect finding has a sound and substantial basis in the record and should be affirmed.

Footnote 2: Petitioner had previously received duplicate reports on August 21, 2023 alleging that, during the mother's visitation with her two older children who are not the subject of this proceeding, methamphetamine use was occurring at her home, there was a lack of food at the home and several people were coming in and out of her home.